1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    SOEUN M.,[1]                              Case No.  19-cv-04518-TSH

8                    Plaintiff,
                                               **ORDER RE: CROSS-MOTIONS FOR**
9           v.                                 **SUMMARY JUDGMENT**

10   ANDREW SAUL,                              Re: Dkt. Nos. 17, 20

11                   Defendant.

12

13                            **I.     INTRODUCTION**

14          Plaintiff Soeun M. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

15   review of a final decision of Defendant Andrew Saul, Commissioner of Social Security, denying

16   Plaintiff's claim for disability benefits.  Pending before the Court are the parties' cross-motions for

17   summary judgment.  ECF Nos. 17 (Pl.'s Mot.), 20 (Def.'s Mot.).  Pursuant to Civil Local Rule 16-

18   5, the motions have been submitted without oral argument.  Having reviewed the parties'

19   positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby

20   **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the following reasons.

21                            **II.    BACKGROUND**

22   **A.     Age, Education and Work Experience**

23          Plaintiff is 64 years old.  AR 87, 135.  She completed the seventh grade and has a limited

24   education.  AR 332.  She has work experience as a babysitter and at a family day care.  *Id.*

25

26

27   ───────────────
     [1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the
28   recommendation of the Committee on Court Administration and Case Management of the Judicial
     Conference of the United States.

United States District Court
Northern District of California

United States District Court
Northern District of California

**B.      The Medical Evidence**

    **1.      Dr. Bland, M.D.'s Psychiatric Evaluation**

      Dr. D. Anton Bland, M.D., completed an Initial Psychiatric Evaluation on Plaintiff on July 16, 2014.  AR 435-39.  Plaintiff was referred by her primary care provider because of "multiple stresses."  AR 435.  Plaintiff complained of feeling worried and thinking often about her physical health and her financial situation since she had been unemployed and unable to find work since 2011, feeling sad most days, hopelessness, feeling low energy, low appetite most days, and some thoughts of suicidal ideation.  *Id.*  However, Plaintiff expressed "a clear preference for minimal medication management" and "not to change the dose of her antidepressant or start an additional antidepressant."  *Id.*  Dr. Bland diagnosed Plaintiff with Major Depressive Affective Disorder, Single Episode, Moderate (ICD-9 code 296.22).  AR 438.

    **2.      Dr. Cohen, M.D.'s Examination**

      On October 19, 2016, Dr. Emily Cohen, M.D., conducted an internal medical examination of Plaintiff.  AR 688-92.  Dr. Cohen noted that Plaintiff was able to walk to and from the examination room without difficulty, and was able to get on and off the examination table without assistance.  AR 690.  She had no difficulty rising from a seated position to standing, but had mild difficulty changing position from supine to sitting.  *Id.*  She was able to follow instructions and was alert and oriented to place, name, date, day of the week, and year.  *Id.*  She exhibited poor muscle strength but it was not clear whether she was exhibiting maximal effort.  *Id.*  She had generally mildly decreased to full range of motion of her extremities and spine.  AR 691.  Dr. Cohen opined that it was difficult to fully assess Plaintiff as she "appeared to give poor effort with muscle strength and peak flow testing."  *Id.*  Dr. Cohen nevertheless opined that Plaintiff could lift ten pounds frequently and twenty pounds occasionally.  AR 692.

    **3.      Dr. Arpaci, Psy.D.'s Mental Status Evaluation**

      On November 4, 2016, Dr. Arpaci, Psy.D., conducted a mental status evaluation of Plaintiff.  AR 695-99.  Plaintiff complained of anxiety, depression, post-traumatic stress syndrome (PTSD), and body pain.  AR 695.  She did not understand herself to be on any psychiatric medications, and she was at that time on a prescription of Zoloft for sleep.  *Id.*  She reported

United States District Court
Northern District of California

passive suicidal ideation and feeling depressed since not being able to work in 2011.  *Id.*

Dr. Arpaci noted that Plaintiff was adequately groomed and had a compliant attitude and behavior, her stream of mental activity was goal directed, concrete, and short, and her mood and affect showed mild dysphoria, congruence, and some constriction.  AR 697.  Plaintiff denied hallucinations.  *Id.*  She could not recall the month or date when asked, though she was aware of her location.  *Id.*  She did not know her date of birth but could recall that she fled Cambodia at age 19 or 20.  AR 696-97.  She was aware of her phone number and address but did not know the current president.  AR 697.

Dr. Arpaci diagnosed Plaintiff with "depression related to medical disorder."  AR 698.  He opined that Plaintiff "primarily appears depressed secondary to multiple physical complaints, causing unemployment and restricted activities."  *Id.*  He found that Plaintiff's ability to perform simple and repetitive tasks appeared unimpaired.  *Id.*  Plaintiff suffered from marked impairment in performing detailed and complex tasks; mild impairment in ability to accept instructions from supervisors; and moderate impairment in ability to interact with coworkers and the public, ability to maintain regular attendance in the work place, and in ability to complete a normal workday or work week without interruptions due to a psychiatric condition.  *Id.*  Plaintiff was "moderately impaired psychiatrically and mostly impaired medically" in her ability to perform work activities on a consistent basis without special or additional instruction.  *Id.*

### 4. Dr. Kalich, Psy.D.

On February 6, 2017, Dr. Lisa Kalich, Psy.D., completed a psychological evaluation on Plaintiff.  AR 793-98.  Plaintiff reported that she was born in 1956 and raised in Cambodia.  AR 793.  Her stepfather physical abused her, her mother, and her siblings, and as a result Plaintiff left home to live with grandparents and lost contact with her mother.  *Id.*  Plaintiff witnessed war atrocities as a child in Cambodia.  *Id.*  She was forced to work in a labor camp.  *Id.*  At age twenty, she escaped to a refugee camp in Thailand and a year later was then able to immigrate to the United States.  *Id.*  Plaintiff was married for approximately 10 years.  *Id.*  She could not recall where she met her husband.  *Id.*  She suffered physical and verbal abuse by her husband before he abandoned Plaintiff and their five children.  AR 793-94.

United States District Court
Northern District of California

1         Plaintiff reported feeling sick and tired "all the time," chronic nausea and dizziness along

2 with ringing in her ears, a poor or minimal appetite, a sad and worried mood, trouble sleeping,

3 daily tearfulness along with trouble experiencing joy, lethargy accompanied with lack of energy

4 and inability to engage in daily activities, and that her she often lies on the sofa during the day

5 without moving.  AR 794-95.  She reported that four days per week she spent lying on the sofa,

6 and that she "ha[d] neglected her self-care, delaying bathing for several days."  AR 797.  Plaintiff

7 also reported symptoms of anxiety, including chronic worry and nightmares, feeling shaky, having

8 trouble breathing, and feeling her heart race.  AR 795.  She reported auditory hallucinations which

9 included ringing in her ears, hearing the voices of children when none are present, and hearing

10 singing.  *Id.*

11        Dr. Kalich gave Plaintiff a Test of Nonverbal Intelligence- Third Edition (TONI-4), a

12 language-free measure of abstract/figural problem solving and intelligence.  AR 796.  Plaintiff

13 obtained a Deviation Quotient of 63, which placed her in the very poor range of functioning and in

14 the less-than-first percentile when compared to same-aged peers.  *Id.*  However, Dr. Kalich noted

15 that Plaintiff was able to successfully hold a job, care for her children, and live independently in

16 the community, thus it was "likely that her score underrepresents her level of general intelligence."

17 *Id.*  Dr. Kalich posited that Plaintiff's score, along with her significant memory impairment, might

18 suggest a decline in cognitive functioning over time, and that her symptoms of severe depression

19 might also be impacting her motivation and cognitive performance.  AR 796-97.

20        Dr. Kalich diagnosed Plaintiff with Unspecified Neurocognitive Disorder, chronic Major

21 Depressive Disorder, and Generalized Anxiety Disorder with panic attacks.  AR 797.  She found

22 marked impairment in Plaintiff's activities of daily living including her ability to adapt and

23 manage herself.  *Id.*  She opined that Plaintiff's cognitive testing results, as well as her mental

24 status during the interview, suggested Plaintiff would have difficulty in "any employment scenario

25 which required basic cognitive skills," and that "her symptoms of anxiety would cause marked

26 impairment in her ability to adapt to change in the workplace or manage typical work stress."  AR

27 797-98.  Dr. Kalich noted that while Plaintiff was able to work for several years, at that time she

28 required assistance with most daily tasks due to her fearfulness of leaving home and her low

4

energy level.  AR 797.  Plaintiff reported being frightened of leaving her house alone, and that her children assisted her with cooking, cleaning, and running errands.  AR 797-98.

Dr. Kalich found marked to extreme impairment in Plaintiff's ability to understand, remember, or apply information, noting that her cognitive functioning was impaired and she was not oriented to date or time and could not recall basic information about herself.  AR 798.  Dr. Kalich found that Plaintiff had intermittently marked impairment in concentration, noting that her symptoms of anxiety, including chronic fearfulness and worry, would likely impair her concentration.  *Id.*  If those feelings triggered in a work setting, Dr. Kalich opined, Plaintiff would be unable to focus on a task.  *Id.*

Finally, Dr. Kalich found that within recent years, Plaintiff had suffered from several episodes of decompensation which were marked by suicidal ideation and a suicidal gesture[2].  *Id.*

### 5.        Physician Assistant Lynde Anne Rouche, PA-C

On August 25, 2017, Rouche completed a medical opinion regarding Plaintiff's ability to do work-related activities.  Rouche evaluated Plaintiff's physical residual functional capacity ("RFC") and limited her to: lifting and carrying 10 pounds on an occasional basis and less than 10 pounds on a frequent basis; standing and walking for two hours in an eight hour day; sitting for four hours in an eight hour day; sitting for 45 minutes before needing to alternate position to relieve discomfort and standing for 20 minutes before needing to do so; and needing to walk around every 20 minutes for 10 minutes each time.  AR 855.  Rouche opined that Plaintiff would need to be able to shift at will from sitting to standing or walking, and would need to lie down at unpredictable intervals during a work shift.  *Id.*  Rouche indicated in support of these findings that x-ray imaging showed mild anterolisthesis, likely on a degenerative basis, and that blood testing showed positive ANA and that Plaintiff had been referred to rheumatology.  AR 856.  Rouche further opined that Plaintiff's impairments would interfere with her concentration or pace of work 30% of the time.  AR 857.

---

[2] A suicidal gesture is "an apparent attempt at suicide by someone wishing to attract attention, gain sympathy, or achieve some goal other than self-destruction."  Stedmans Medical Dictionary 368970.

United States District Court
Northern District of California

### 6.    Dr. Guh's Medical Opinion

In a medical opinion dated March 1, 2018, treating provider Dr. Emily Guh, M.D., evaluated Plaintiff's physical RFC and limited her to: lifting and carrying less than 10 pounds on an occasional or frequent basis; sitting, standing, and walking for less than two hours in an eight hour day; sitting for 20 minutes before needing to alternate position to relieve discomfort and standing for 10 minutes before needing to do so; and needing to walk around every 90 minutes for five minutes each time. AR 917. Dr. Guh also opined that Plaintiff would need to be able to shift at will from sitting to standing or walking, and would need to lie down at unpredictable intervals during a work shift. *Id.* Dr. Guh indicated in support of these findings that Plaintiff had "low back pain[;] x[-]ray of lumbar spine shows mild anterolisthesis of L4 and L5[;] she has fatigue and is mid-workup with elevated ANA[3] 1:40 and E5R60[;] she has been referred to rheumatology." AR 918. Dr. Guh opined that Plaintiff's impairments would interfere with her concentration or pace of work 50% of the time. AR 919.

### 7.    State Agency Consultants

In November 2016, state agency consultants E. Trias, M.D., and Tawnya Brode, Psy.D., reviewed Plaintiff's records and opined that her medically determinable physical and mental impairments were non-severe. AR 135-54. In February 2017, state agency consultants A. Resnik, M.D., and S. Gold, M.D., reviewed Plaintiff's records and affirmed these opinions. AR 177-95.

### 8.    Other Medical Evidence

On June 19, 2015, Dr. Grace Lat, M.D., noted after a follow-up visit that Plaintiff was only taking Sertraline as needed, but was advised that she needed to take it every day to stabilize her

---

[3]

> An ANA test detects antinuclear antibodies (ANA) in [] blood. [The] immune system normally makes antibodies to help [] fight infection. In contrast, antinuclear antibodies often attack [the] body's own tissues — specifically targeting each cell's nucleus. In most cases, a positive ANA test indicates [the] immune system has launched a misdirected attack on [a body's] own tissue — in other words, an autoimmune reaction. . . . [A] doctor is likely to order an ANA test for a suspected autoimmune disease such as lupus, rheumatoid arthritis or scleroderma.

Mayo Clinic, "ANA test," https://www.mayoclinic.org/tests-procedures/ana-test/about/pac-20385204 (last visited Aug. 9, 2020).

United States District Court
Northern District of California

1  mood.  AR 642.

2       Treatment notes often documented appropriate mood and affect, and orientation to time,

3  place, person, and situation.  *E.g.*, AR 445 (8/4/15); 525 (12/3/15); 514 (3/29/16); 718 (1/13/17);

4  886 (8/4/17); 878 (8/25/17); 862 (10/20/17).  Notes generally indicated that Plaintiff was not

5  having thoughts of hurting herself or others.  *E.g.*, AR 445; 530 (9/21/15); 514 (3/29/16); 774

6  (11/2/16); 767 (11/8/16); 899 (4/3/17); 893 (5/1/17); 885 (8/4/17); 870 (10/6/17); 862 (10/20/17).

7  Plaintiff's hypertension, hyperlipidemia, hypothyroidism, and asthma were managed with

8  medications and were noted to be under "good control."  *E.g.*, AR 521-2 (12/3/15); 501 (7/21/16);

9  591 (11/8/16); 712-13 (1/13/17); 888 (5/1/17).  Plaintiff consistently reported her pain level as 0

10  out of 10 or 1 out of 10 on a numeric pain intensity scale.  AR 445 (8/4/15, "0/10"); 513 (3/29/16,

11  "0/10"); 506 (7/21/16, "0/10"); 753 (1/3/17, "1/10"); 899 (4/3/17, "0/10"); 892 (5/1/17, "0/10");

12  869 (10/6/17, "0/10"); 861 (10/20/17, "0/10").

13       In July 2016, Plaintiff reported to physician assistant Rouche that she had gone on a trip

14  back home to Cambodia.  AR 501.  Plaintiff presented with gastroesophageal reflux disease

15  ("GERD") without esophagitis, but declined referral for an endoscopy, wanting to try dietary

16  changes before considering referral if her pain continued.  AR 501-02.  Plaintiff continued to

17  decline referral for an endoscopy for the same reasons on November 6, 2016 (AR 592), August 4,

18  2017 (AR 882), and October 6, 2017 (AR 866).

19       On November 8, 2016, Plaintiff reported to Rouche that she exercised two to three times a

20  week for five to ten hours a week.  AR 595.

21       On August 25, 2017, radiological imaging showed Plaintiff's "usual lumbar lordotic

22  curvature" was "maintained," "very mild" anterolisthesis of the L4 and L5 vertebrae "likely on [a]

23  degenerative basis," no evidence of compression deformity in the vertebral bodies, and intact

24  pedicles.  AR 853.  An x-ray of Plaintiff's thoracic spine the same day showed no abnormalities.

25  AR 854.

26                    **III.   THE ADMINISTRATIVE PROCEEDINGS**

27       On July 19, 2016, Plaintiff protectively filed a claim for Disability Insurance Benefits

28  ("DIB") and a claim for Supplemental Security Income ("SSI"), alleging disability beginning on

December 25, 2011.  AR 136, 156.  On December 1, 2016, the agency initially denied Plaintiff's claim, finding she did not qualify for disability benefits, and denied Plaintiff's request for reconsideration on February 23, 2017.  AR 220, 229.  On March 13, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 236-37.  Before the hearing, Plaintiff requested to amend her alleged onset date to August 4, 2015.  AR 390.  ALJ Kevin Gill conducted a hearing on March 7, 2018.  AR 83.  Plaintiff testified at the hearing through an interpreter and was represented by an attorney.  *Id.*  The ALJ also heard testimony from Vocational Expert Freeman Leeth.  *Id.*

### A.      Plaintiff's Testimony

On March 7, 2018, Plaintiff testified that she completed four years of elementary school before coming to the United States, and that once in the U.S. she went to school for about a year, mainly English language courses.  AR 88.  She has no GED.  *Id.*  She had relevant work experience as a caregiver at a children's day care and then later an elderly caregiver, before discontinuing work in December 2011.  AR 88-90.

Plaintiff testified that what prevented her from working was low energy, and that she also had problems breathing, high blood pressure, problems with her thyroid, stomach problems, high cholesterol, and dizziness.  AR 90-91.  She testified that she has constant pain in her lower back, in her shoulder, and on both sides of her neck.  AR 95.  She took a Tylenol to relieve pain before attending her hearing because whenever sitting she would need to lie down.  AR 96.  She is also forgetful and forgets appointments if she does not write them down.  AR 93.

Plaintiff testified that on a normal day she spends most of her day on the couch, meditating and listening to recordings of monks chanting.  AR 92.  She suffers from panic attacks and anxiety, mostly at night but sometimes during the day also.  AT 92.  Plaintiff's daughter visits her three to four times per week, and sometimes spends the night.  AR 93.  She relies on her daughter for help cleaning, grocery shopping, picking up and taking her medications, and getting dressed.  *Id.*

### B.      Vocational Expert's Testimony

The Vocational Expert testified that an individual of Plaintiff's age, education, and past

work experience, who is limited to (1) performing simple, routine tasks, and (2) work that does not require more than basic English could perform three jobs: Laundry worker (DOT 361.685-018, medium, SVP 2); Packager (DOT 920.587-018, medium, SVP 2); and Cleaner (DOT 919.687-014, medium, SVP 1).  AR 99.

**C.     The ALJ's Decision and Plaintiff's Appeal**

A claimant is considered "disabled" under the Social Security Act if two requirements are met.  *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  First, the claimant must demonstrate "an inability to engage in any substantial gainful activity [("SGA")] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Second, the impairment or impairments must be severe enough that the claimant is unable to perform previous work and cannot, based on age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.  20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in SGA, 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities,"  *Ford*, 950 F.3d at 1148 (internal quotations and citation omitted).  Here, the ALJ determined Plaintiff had not performed SGA since her amended alleged onset date of August 4, 2015.  AR 28.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities,'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c).  Here, the ALJ determined that Plaintiff had the following severe

9

impairments: depressive disorder, anxiety disorder, and PTSD.  AR 28.

At step three, the ALJ evaluates whether the claimant has an impairment or combination of impairments that meets or equals an impairment in the "Listing of Impairments" (the "listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any [SGA]."  *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 404.1525(c)(3).  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, she is conclusively presumed to be disabled, without considering age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings.  AR 32.

If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses the claimant's RFC, defined as the most the claimant can still do despite her imitations, 20 C.F.R. § 404.1545(a)(1), and determines whether the claimant is able to perform past relevant work, defined as "work that [the claimant has] done within the past 15 years, that was [SGA], and that lasted long enough for [the claimant] to learn to do it," 20 C.F.R. § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled.  *Id.* § 404.1520(f).  Here, the ALJ determined Plaintiff has the RFC to perform a full range of work at all exertional levels but with the non-exertional limitations that she is limited to performing simple, routine tasks and work that does not require more than basic English.  AR 34. Based on this RFC, the ALJ determined Plaintiff could not perform past relevant work.  AR 37.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'"  *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).  To meet this burden, the ALJ may rely

on the Medical-Vocational Guidelines found at 20 C.F.R. Pt. 404 Subpt. P, App. 2[4], or on the

testimony of a vocational expert.  *Ford*, 950 F.3d at 1149 (citation omitted).  "[A] vocational

expert or specialist may offer expert opinion testimony in response to a hypothetical question

about whether a person with the physical and mental limitations imposed by the claimant's

medical impairment(s) can meet the demands of the claimant's previous work, either as the

claimant actually performed it or as generally performed in the national economy."  20 C.F.R. §

404.1560(b)(2).  An ALJ may also use "other resources, such as the DOT.  *Id.*  Here, the ALJ

determined, considering Plaintiff's age, education, work experience, and RFC, that there are jobs

existing in significant numbers in the national economy that Plaintiff can perform.  AR 37.

Accordingly, the ALJ found that Plaintiff was not disabled.  AR 38.

      The ALJ issued an unfavorable decision on June 12, 2018.  The decision became final on

June 5, 2019 when the Appeals Council declined to review it.  AR 1-3.  Having exhausted all

administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C.

§ 405(g).  On January 6, 2020, Plaintiff filed the present Motion for Summary Judgment (the

"Motion"), and on March 4, 2020, Defendant filed a Cross-Motion for Summary Judgment.

## IV.   STANDARD OF REVIEW

      This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42

U.S.C. § 405(g).  An ALJ's decision to deny benefits must be set aside only when it is "based on

legal error or not supported by substantial evidence in the record."  *Trevizo v. Berryhill*, 871 F.3d

664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek

v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation and quotation marks omitted).  It requires

"more than a mere scintilla" but "less than a preponderance" of the evidence.  *Id.*; *Trevizo*, 871

---

[4] The Medical-Vocational Guidelines "relieve the Secretary of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy."  *Heckler v. Campbell*, 461 U.S. 458, 461(1983).  The Guidelines "consist of a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy."  *Id.* at 461-62 (footnotes omitted). The guidelines are commonly known as "the grids."  *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

United States District Court
Northern District of California

F.3d at 674.

The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d at 675 (citation and quotation marks omitted). However, "[w]here evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* (citation and quotation marks omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation and quotation marks omitted).

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* (citation and quotation marks omitted). A court may not reverse an ALJ's decision because of a harmless error. *Id.* at 1111 (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* (citation and quotation marks omitted).

## V.    DISCUSSION

### A.    Plaintiff's Arguments

Plaintiff argues that the ALJ's finding that she has no severe physical impairment is not supported by substantial evidence; that the ALJ failed to properly consider medical equivalence at the third step of the evaluation process; that the ALJ failed to provide specific and legitimate reasons for crediting one psychological medical source opinion over another; that the ALJ discounted her statements as to the severity of her symptoms without substantial evidence; that the ALJ's RFC findings and the resulting vocational expert testimony were not based on substantial evidence; and that the ALJ failed to properly apply SSR 85-15 at the fifth step of the evaluation process. Plaintiff argues the Court should grant summary judgment and remand for the award of benefits.

**B.      The ALJ's Step Two Findings**

Plaintiff argues that the ALJ erred by finding that she had no severe physical impairments, that the finding was based on speculation and thus didn't meet the substantial evidence standard. Mot. at 6.  At step two, the ALJ determined that Plaintiff had the severe impairments of depressive disorder, anxiety disorder, and PTSD, but found no severe physical impairments.

"The evaluation at step two is a de minimis test intended to weed out the most minor of impairments."  *Wilson v. Astrue*, 2010 U.S. Dist. LEXIS 105658, at *12 (C.D. Cal. Oct. 1, 2010) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987); *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001)).  Under that standard, "[a]n impairment or combination of impairments may be found not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citations and internal quotations omitted).  Such a conclusion must be "'clearly established by medical evidence.'"  *Id.* (quoting SSR 85-28).  "In determining whether a claimant's physical or mental impairments are of a sufficient medical severity" that they could be the basis of eligibility, an ALJ considers "the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  42 U.S.C. § 423(d)(2)(B).  A claimant's "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, are considered in making a determination as to whether [the claimant's] impairment or combination of impairment(s) is severe."  20 C.F.R. § 404.1529(d)(1).  "If the impairments are not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity."  *Bowen*, 482 U.S. at 146.  The burden is on a claimant to demonstrate that she has a medically severe impairment or combination of impairments.  *Id.*; *id.* at n. 5 ("The claimant first must bear the burden . . . at step two that [s]he has a medically severe impairment or combination of impairments . . . .").

Plaintiff argues first that the ALJ considered "each of [her] medically document physical impairments in a vacuum, without regard for how each impairment may affect the other."  Mot. at 7.  She argues that it is "unfounded to pretend that none of [her physical] impairments impact

[any] others – a point the ALJ ignores altogether."  Mot. at 8.  Accordingly, she contends that the ALJ failed to properly consider whether the combination of her physical impairments are of a sufficient medical severity that they could be the basis of eligibility.

As a preliminary point, Plaintiff makes no attempt to tie any of her alleged symptoms to the presence or severity of any physical impairment, or to explain how the combination of any of her non-severe impairments makes her physical impairments severe, despite her burden to do so. The combined effect of apparently disparate impairments does not automatically become severe simply because a claimant alleges more of them.

The ALJ considered each of Plaintiff's physical impairments one by one and found that "[t]he medical evidence does not establish that these conditions are severe impairments."  AR 29; *see* AR 29-30.  Discussing Plaintiff's allegations that she had pain in her back and shoulders, the ALJ noted that x-ray imaging showed only "very mild" degeneration in Plaintiff's lumbar spine and none in her thoracic spine[5], and that Plaintiff "generally reported to her providers that her pain was 0/10 or 1/10 on the 10-point pain intensity scale" with "only one instance of increased (4/10) pain related to her low back."  AR 29, 30 (citations to the AR omitted).  The ALJ also considered conflicting opinion evidence about the extent to which Plaintiff's physical impairments affected her functionality.  AR 30-31.  He gave "significant weight" to the opinions from the State agency medical consultants, who all recommended a determination of "non-severe" for Plaintiff's physical impairments.  AR 30 (citing AR 148, 168, 189, 208).  The State agency physicians considered the evidence available at the time of their reviews and made the conclusions that Plaintiff's "[i]mpairment or combination of impairments does not significantly limit physical or

---

[5] "Lumbar degenerative disc disease is a chronic (ongoing) degenerative condition of the lumbar spine that affects the vertebral bodies and intervertebral discs of the low back.  The discs lose water content and shrink, and spurs often form as osteoarthritis develops.  Lumbar degenerative disc disease is quite common and progresses with age."  Michigan Medicine, University of Michigan, "Lumbar Degenerative Disease," https://www.uofmhealth.org/conditions-treatments/cmc/back-neck-and-spine-conditions/lumbar-degenerative-disease (last visited Aug. 16, 2020); *see also* Arthritis Foundation, "Degenerative Disc Disease," https://www.arthritis.org/diseases/degenerative-disc-disease (last visited Aug. 16, 2020) ("As a normal process of aging, [] discs begin to wear down.  Sometimes the discs wear away completely over time.  The bones rub against one another, causing the pain and stiffness of osteoarthritis.  After age 40, most people have some disc degeneration, but not always with pain.").

1    mental ability to do basic work activities."  AR 150, 210.  The ALJ found those opinions

2    persuasive because they were consistent with the medical evidence, such as the x-rays showing

3    "very mild" degeneration, and Plaintiff's regular reporting of little to no pain.  AR 30 (citations to

4    AR omitted).  And he found the opinions consistent with Plaintiff's self-reporting on November 8,

5    2016 that she exercised 2-3 times a week for 5-10 hours a week.  *Id.* (citing AR 595).  The ALJ

6    then addressed the functional assessments offered by Drs. Cohen and Guh and PA Rouche, and

7    provided legitimate reasons, supported by reference to the record, for giving little weight to those

8    opinions.  AR 30-31.  Lastly, at step two the ALJ cited 20 C.F.R. § 404.1520(c), which is the

9    section of the code that provides that a claimant must have an "impairment or combination of

10   impairments which significantly limits [her] physical or mental ability to do basic work activities,"

11   in other words, an impairment or combination of impairments which is severe.

12           The Code directs that the ALJ "shall *consider* the combined effect of all of the individual's

13   impairments," 42 U.S.C. § 423(d)(2)(B) (emphasis added), but there is no requirement that the

14   ALJ state explicitly that he or she considered the combination of impairments and found the

15   combined effect was not severe.  *See Lockwood v. Comm'r SSA*, 616 F.3d 1068, 1070 (9th Cir.

16   2010) ("Although an ALJ is required by regulation to *consider* whether to use an older age

17   category in a borderline situation, there is no requirement that the ALJ explain in her written

18   decision why she did not use an older age category.") (citing 20 C.F.R. § 404.1563(b), which

19   explains, "[i]f you are within a few days to a few months of reaching an older age category . . . we

20   will *consider* whether to use the older age category after evaluating the overall impact of all the

21   factors of your case.") (emphasis added)).  Because the ALJ cited 20 C.F.R. § 404.1520(c), and

22   then considered the medical evidence and the severity of Plaintiff's individual impairments before

23   then weighing medical opinions on the severity of the claimant's combined physical impairments,

24   the Court can infer that the ALJ's findings were based on a consideration of whether a

25   combination of Plaintiff's physical impairments was severe.  *See Lockwood*, 616 F.3d at 1071-72

26   (ALJ "satisfied the requirement that she *consider* whether to use the older age category" where she

27   mentioned the claimant's age and cited the relevant section in the Code); *id.* at 1072 ("the ALJ's

28   decision shows that the ALJ knew she had discretion "to use the older age category" because she

United States District Court
Northern District of California

15

cited the Code section and the claimant's age); *id.* at n.3 ("We presume that ALJs know the law and apply it in making their decisions.").  Furthermore, substantial evidence supports the finding that Plaintiff's physical impairments, individually or in combination, did not significantly limit the claimant's ability to perform most jobs.

Plaintiff next takes issue with the ALJ's finding that her "occasional GERD flares cause [no] more than minimal limitations in her ability to perform basic, work-related activities, and [] is a non-severe impairment."  In reaching that conclusion, the ALJ noted that records indicated that Plaintiff occasionally used medication to treat her GERD but that she preferred to manage it through dietary changes.  Plaintiff argues that it does not follow from how a particular medical problem is addressed that an individual's functional limitations can be conclusively determined.  Mot. at 7.  She argues that "[o]ne can just as easily speculate that GERD requiring dietary restrictions and occasional medication does, in fact, have more than minimal effects."  But Plaintiff bears the burden here and cannot do so by suggesting it's just as likely as not that her impairment is severe.  She has pointed to no particular evidence which would suggest that her GERD had any effects on her ability to engage in gainful activity.  Also, contrary to Plaintiff's argument, the Ninth Circuit has repeatedly held that an ALJ can find an impairment is non-severe based on the nature of treatment and response to such treatment.  *See, e.g.*, *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.") (citing, *inter alia*, *Odle v. Heckler,* 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that "[m]edical evidence existed to establish [claimant] had a 'fair response' with antibiotics" to his physical impairments)).

*Bagdasaryan v. Saul*, 787 F. Appx 423 (9th Cir. 2019), is on point.  In that case, the ALJ had determined that the claimant's fibromyalgia was non-severe.  The Ninth Circuit affirmed this finding on the ground that "[t]he ALJ reasonably concluded from the record that this condition was well-controlled with medication and did not require specialist care."  787 Fed. Appx. at 724 (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("'The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record.'") (quoting *Batson v.*

16

United States District Court
Northern District of California

*Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)).  The court noted that, "[a]lthough [the claimant] challenges the ALJ's Step Two determination that her migraine headaches and back pain were nonsevere, she presents no argument as to these physical impairments."  787 Fed. Appx. at 724.  And the court found that the ALJ had provided specific and legitimate reasons for rejecting a treating physician's opinion on the claimant's physical functioning "as unsupported by the record and inconsistent with the conservative treatment [he] prescribed."  *Id.*

Substantial evidence supports the ALJ's finding that Plaintiff's GERD was not a severe impairment.  Therefore, the ALJ committed no error.  Plaintiff makes precisely the same argument with the rest of her physical impairments, and that argument fails for the same reasons.

**C.      The ALJ's Step Three Findings**

Plaintiff argues that the ALJ failed to properly consider medical equivalence at the third step of the evaluation process.

At step three of the sequential evaluation, a claimant's impairment or combination of impairments is medically equivalent to a listed impairment—establishing a disability and ending the five-step inquiry—if the claimant's impairment or combination of impairments "is at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 404.1526(a).  To present an equaling argument, a claimant "'must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'"  *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013) (quoting *Sullivan*, 493 U.S. at 531).  The claimant "cannot qualify for benefits under the 'equivalence' step [merely] by showing that the overall functional impact of [her] unlisted impairment or combination of impairments is as severe as that of a listed impairment."  *Id.*  "Listed impairments set such strict standards because they automatically end the five-step inquiry, before [RFC] is even considered."  *Kennedy*, 738 F.3d at 1176.

Here, Plaintiff did not present an equivalence theory to the ALJ or to the Appeals Council.  And even now, she does not specify which listing(s) she believes she meets or equals, and does not attempt to explain how any evidence would support a finding that the <u>all</u> the criteria of any listing have been met.  "'[A]n ALJ is not required to discuss the combined effects of a claimant's

impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.'" *Id.* at 1178 (quoting *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005)).  In *Kennedy*, the Ninth Circuit found that the ALJ had adequately addressed the third step "given that [the claimant] never presented evidence or advanced an argument for equivalency," and since the ALJ had specifically addressed the listing and found that criteria were not met.  738 F.3d at 1175, 1178.  Similarly, in *Burch* the Ninth Circuit found that the ALJ did not err in concluding that the claimant's impairments did not equal a listing where the claimant did not specify which listing she believed she met or equaled and did not "set forth any evidence which would support the diagnosis and finding of a listed impairment." 400 F.3d at 682-83; *see also Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (determining that the ALJ's failure to consider equivalence was not reversible error because the claimant "offered no theory, plausible or otherwise," as to how his impairments combined to equal a listing impairment).[6]  Here, the ALJ found that the severity of Plaintiff's mental impairments, considered singly or in combination, did not meet or medically equal the criteria of listings 12.04, 12.06, or 12.15.[7]  In reaching that conclusion, he considered whether the "paragraph b" or "paragraph c" criteria for those disorders were satisfied and found that they were not.  He based this determination on substantial evidence in the record.  Accordingly, the ALJ did not err in concluding that Plaintiff had no impairment or combination of impairments that met or medically equaled one of the listings.

---

[6] Plaintiff relies repeatedly on the Ninth Circuit's wording in *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) that, "in determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments."  But the Ninth Circuit clarified in *Kennedy* that, "*Marcia* simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion," and explained that the ALJ is not required to discuss the combined effects of a claimant's impairments "unless the claimant presents evidence in an effort to establish equivalence."  738 F.3d at 1178 (citations and internal quotation marks omitted).

[7] Plaintiff asserts that it appears nowhere in the ALJ's decision that he considered Plaintiff's impairments in combination.  That's not accurate.  The ALJ explicitly found that "the severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically qual the criteria of listings 12.04, 12.06, [or] 12.15."  AR 32.  It's of no consequence that the ALJ didn't make the same finding at step three with regards to Plaintiff's physical impairments, because Plaintiff did not raise an equivalence theory, and the ALJ already found at step two that those impairments were not severe, and thus could not support a finding of disability, and that finding was not in error.

**D.**     **The ALJ's RFC and Weighing of Medical Opinions**

Next, Plaintiff argues that the ALJ erred because he did "not give credit to any one of the multiple medical opinions in the record regarding Plaintiff's mental impairments," and instead concluded that Plaintiff has only mild or moderate limitations in the four areas of mental functioning.  Plaintiff argues that the ALJ failed to identify any medical source that supported the diagnoses or degree of functional limitations he found Plaintiff had.  She argues that the ALJ "conjured an RFC out of thin air: he substituted his own judgment for that of the opinions of the medical experts in the record and did not provide specific and legitimate reasons supported by substantial evidence for doing so."  Reply at 4-5.

"When determining whether a claimant is disabled, the ALJ must consider each medical opinion in the record together with the rest of the relevant evidence."  *King v. Berryhill*, 2018 WL 4586726, at *11 (N.D. Cal. Sept. 25, 2018) (citing 20 C.F.R. § 416.927(b)).  In deciding how much weight to give to any medical opinion, the ALJ considers the extent to which the medical source presents relevant evidence to support the opinion.  *Id.* § 416.927(c)(3).  Generally, more weight will be given to an opinion that is supported by medical signs and laboratory findings, and the degree to which the opinion provides supporting explanations and is consistent with the record as a whole.  *Id.* § 416.927(c)(3)-(4).  The better an explanation a source provides for a medical opinion, the more weight will be given.  *Id.* § 416.927(c)(3).  Although an ALJ will "consider opinions from medical sources on issues such as whether [a claimant's] impairment(s) meets or equals the requirements of any impairment(s) in the [Listings], [her] residual functional capacity, or the application of vocational factors, the final responsibility for deciding these issues is reserved to" the ALJ.  *Id.* § 416.927(d)(2).

As a preliminary point, the RFC is, contrary to Plaintiff's argument, an administrative finding, not a medical one.  It is thus the ALJ's province to assign an RFC and not the responsibility of any medical provider.  *Id.* § 404.1546(c) ("If your case is at the [ALJ] hearing level . . . the [ALJ] . . . is responsible for assessing your residual functional capacity.").

Plaintiff's conclusory argument that the ALJ "conjured an RFC out of thin air" is undeveloped and wrong.  The ALJ weighed three medical opinions, explaining which parts of

19

each received how much weight.  AR 35-36.  There is no legal requirement that the ALJ must "give credit to any one of the multiple medical opinions," as Plaintiff argues; he may give each opinion its due weight.  There is no inconsistency in the ALJ's giving partial weight to the state agency consultants, who found Plaintiff's mental impairments to be non-severe, while also including a limitation to simple, routine work in the RFC assessment to address Plaintiff's intermittent or dysphoric mood; giving weight to part of an opinion but rejecting another part of it is what it means to give an opinion partial weight.  Beyond that, the only specific arguments Plaintiff makes in this section of the motion and reply are that the ALJ improperly discounted Drs. Arpaci and Kalich's opinions.

### 1.    Dr. Arpaci's Opinion

Plaintiff argues that the reasons the ALJ gave for discounting the limitations assessed by Drs. Arpaci and Kalich were not legitimate.  Regarding Dr. Arpaci's opinion, the ALJ gave little weight to Dr. Arpaci's finding that Plaintiff had a moderate impairment in performing work activities on a consistent basis.  AR 35.  The ALJ found this assessment was "not persuasive because Dr. Arpaci found that [Plaintiff's] depression was related to her physical health issues, and . . . the evidence does not establish that she has more than minimal limitations from her physical impairments."  AR 35-36.  The ALJ discounted Dr. Arpaci's other findings of moderate to marked impairments because he found they were inconsistent with Plaintiff's "limited mental health treatment (e.g. only medication management from medical providers and no psychiatric hospitalizations), and with the observations that she generally had appropriate mood and affect, indicating stable symptoms."  AR 36 (citations to AR omitted).  The ALJ also gave limited weight to Dr. Arpaci's findings because they were "based on the claimant's self-reports, which were not supported by the medical evidence."  *Id.*

Plaintiff's main argument here is that the ALJ erred in discounting Dr. Arpaci's assessment of a moderate impairment in performing work activities because the ALJ inaccurately found that Dr. Arpaci linked this limitation to Plaintiff's physical health issues, which the ALJ found were not severe.  *See* AR 35.  But the record supports the ALJ's reasoning.  Plaintiff focuses on the fact that the ALJ quoted one part of a statement in Dr. Arpaci's evaluation while omitting another part

United States District Court
Northern District of California

of it—the ALJ noted that Dr. Arpaci's finding of a moderate impairment in performing work activities on a consistent basis was "based on her being 'mostly impaired medically,'" AR 35 (quoting Dr. Arpaci's evaluation at AR 698); the full line from the evaluation read, "[t]he claimant's ability . . . appears moderately impaired psychiatrically and mostly impaired medically." AR 698. But the ALJ's omission of "moderately impaired psychiatrically" doesn't change the fact that Dr. Arpaci found that Plaintiff's ability to perform work activities was impaired *mostly* (primarily) due to medical (physical) health issues. Plaintiff ignores Dr. Arpaci's prognosis of, "[P]rimarily appears depressed *secondary to multiple physical complaints . . . .* [C]laimant appears to have significant depression *related to health issues*." AR 698 (emphasis added). Also not accurate is Plaintiff's assertion that Dr. Arpaci did not link the persistence of her depression to the persistence of her physical impairments. *See* Reply at 6 ("[N]owhere does Dr. Arpaci specify that were Plaintiff to have . . . only 'minimal limitations' from her physical impairments, her limitations with regard to workplace performance would disappear."). Dr. Arpaci explicitly opined that, "[w]ere [claimant's] physical health to improve, [her] depression would likely improve." AR 698. The ALJ accurately summarized the substance of Dr. Arpaci's evaluation. Because the ALJ found that Plaintiff's physical impairments were not severe, and because that finding was supported by substantial evidence, he did not err in discounting this part of Dr. Arpaci's opinion.

Plaintiff also takes aim at the ALJ's finding that Dr. Arpaci's assignment of moderate-to-marked impairment in workplace performance was inconsistent with Plaintiff's limited mental health treatment and observations about her mood and affect. She argues that "in preparing her Medical Opinion, Dr. Arpaci conducted a review of the very same treatment records that the ALJ reviewed, and her review of those treatment records informed her assessment of moderate and moderate-to-marked limitations in workplace performance." Reply at 6. But that's not accurate either. Dr. Arpaci indicated that she reviewed an initial psychiatric evaluation from July 6, 2014 and "medical notes dated September 21, 2015." AR 695. The ALJ reviewed and cited additional evidence, including records generated after Dr. Arpaci's evaluation. Finally, Plaintiff does not even address the ALJ's reasoning that Dr. Arpaci's findings were based on Plaintiff's self-reports

which were also not supported by the medical evidence.  *See* AR 36.  Thus, Plaintiff waives a

challenge to the ALJ's findings here.  *See Christina E. S. v. Saul*, 2020 WL 868604, at *4, n. 6

(C.D. Cal. Feb. 21, 2020) (finding "the Court may take a Plaintiff's failure to address aspects of

the ALJ's reasoning [] as a waiver of a challenge to those aspects" where plaintiff addressed two

of the ALJ's reasons "in a cursory fashion" and did not acknowledge the third reason) (citing

*Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (failure to challenge issues in district court

means the claimant "has waived these issues")); *Owens v. Colvin*, 2014 WL 5602884, at *4 (C.D.

Cal. Nov. 4, 2014) (claimant's failure to discuss, or even acknowledge, ALJ's reliance on certain

reasons waived any challenge to those aspects of ALJ's finding).

### 2.    Dr. Kalich's Opinion

Moving to Dr. Kalich's opinion, the Court notes first that Plaintiff's assertion that Dr.

Kalich reviewed and incorporated into her opinion the same records to which the ALJ refers is,

again, not accurate.  The ALJ reviewed significantly more records, including more recent records,

and incorporated those records into the decision when weighing Dr. Kalich's opinion.  *See* AR 32,

36, 793.  Dr. Kalich found at least marked impairment in activities of daily living; understanding,

remembering, and applying information; and concentration, persistence, and pace.  AR 797-98.

The ALJ gave little weight to Dr. Kalich's opinion.  He reasoned that the opinions were based on

Plaintiff's poor performance on the TONI-4 test and that Dr. Kalich opined that it was "likely"

that the score on that test "underrepresents [Plaintiff's] level of general intelligence."

Additionally, the ALJ found that Plaintiff had made statements and given answers to Dr. Kalich

that were not consistent with Plaintiff's treatment notes, with her self-reporting to medical

providers that she can perform activities of daily living and read and write, or with frequent

observations elsewhere in the record that she was generally oriented to time, place, person, and

situation.  AR 36 (citing AR 445, 514, 525, 689, 718, 862, 878, 885-86, 899 (indicating proper

orientation)); *see also* AR 32 (citing, *inter alia*, AR 445, 514, 519, 753, 767, 774, 862, 899

(indicating that Plaintiff can read and write)).  Plaintiff points out that Dr. Kalich wrote that her

TONI-4 score, "along with her significant memory impairment, [] may suggest a decline in

cognitive functioning over time."  But Dr. Kalich wrote that under the section of her evaluation

United States District Court
Northern District of California

discussing Plaintiff's score on the TONI-4 test, which score the ALJ gave little weight because Dr. Kalich had "called into question the validity" of the score.  AR 31, 36.  Also, Dr. Kalich's assessment that Plaintiff had significant memory impairment came in part from the fact that Plaintiff could not provide the correct date or year, or her birthdate, *see* AR 796, and the ALJ explicitly found those answers (or lack of) were not consistent with her report that she could perform activities of daily living and that she was "generally oriented" to time, place, person, and situation, AR 36.  Since Dr. Kalich obviously relied on Plaintiff's performance on the TONI-4 in reaching her conclusions that Plaintiff suffered from marked impairments, even though she suggested it was "likely" the score underrepresented Plaintiff's abilities, that alone was a legitimate reason to give Dr. Kalich's opinion little weight.  Indeed, Dr. Kalich's own evaluation reveals this inconsistency.  For example, just before concluding that Plaintiff's TONI-4 score "likely underrepresents" her level of general intelligence, she notes that Plaintiff "was able to successfully hold a job, care for her children, and live independently in the community," but then goes on to conclude that Plaintiff would have marked impairment with regard to activities of daily living and "have difficulty in any employment scenario which required basic cognitive skills." The ALJ committed no error in assigning little weight to Dr. Kalich's opinion.

**E.      Plaintiff's Statements Concerning Her Symptoms**

> In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . .  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.

*Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citations and internal quotation marks omitted).

Plaintiff makes no attempt, either in her brief or in her reply, to explain how any of her testimony about her symptoms supports a finding that she meets the criteria for any of the impairments she alleges.  Nor does she make any attempt to engage with the ALJ's reasoning for finding her statements as to the limiting effects of her impairments to be inconsistent with the

United States District Court
Northern District of California

record.  In her brief, she essentially pretends that the ALJ completely ignored her statements as to her symptoms and failed to provide any reasons for discounting them.  Neither is true.  *See* AR 34-35.  In fact, the ALJ did note Plaintiff's testimony that "she has low energy," that she "lays down on the sofa for a long time each day," "that she has panic attacks, but [] usually at night, and that she feels melancholy usually at night."  AR 35.  He found that the evidence showed that Plaintiff's "medically determinable impairments could reasonably be expected to cause [these] alleged symptoms[.]"  *Id.*  However, he found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence and other evidence in the record.  *Id.*  He then spent an entire paragraph discussing evidence which supported that conclusion.  *Id.*  Defendant discussed this part of the ALJ's decision at length, so it was flagged, but in her Reply Plaintiff nevertheless continued to ignore it.  Thus, Plaintiff waives this argument.  *See Owens*, 2014 WL 5602884, at *4 (claimant's failure to discuss, or even acknowledge, ALJ's reliance on certain reasons waived any challenge to those aspects of ALJ's finding).

## F.      The Vocational Expert's Testimony and the RFC

Plaintiff argues that the ALJ erred because the hypothetical he posed to the Vocational Expert did not comprise all of her impairments.

"[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by [a] claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy."  20 C.F.R. § 404.1560(b)(2).  "At the hearing, the ALJ poses hypothetical questions to the vocational expert that set out all of the claimant's impairments for the vocational expert's consideration.  The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record."  *Tackett*, 180 F.3d at 1101 (citations and internal quotation marks omitted).  However, "[a]n ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."  *Osenbrock, v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).  Furthermore, "the ALJ is not required to discuss evidence that is neither

24

significant nor probative." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

Plaintiff here argues that the ALJ's "finding of zero exertional limitations is completely at odds with the findings of examining Drs. Guh and Cohen and [PA] Rouche." Mot. at 14. But she did not challenge the ALJ's assigning of little-to-no weight to those opinions when she challenged the ALJ's findings at step two, and in bringing up the issue now she entirely ignores the ALJ's discussion of those opinions and reasons for rejecting them. Plaintiff has therefore waived that challenge; without it, her first argument regarding the ALJ's hypothetical is mooted. Since the ALJ found Plaintiff's physical impairments were not severe, he was not required to pose a hypothetical that comprised those limitations.

Plaintiff next points out that the ALJ found that Plaintiff is "not able to communicate in English," even though the RFC limits her to "work that does not require more than basic English." AR 37, 34. The ALJ, Plaintiff contends, fails to explain how a person who cannot communicate in English can work in a job which requires basic English. Indeed, the two findings would seem irreconcilable. Defendant ascribes this to a typographical error, and the Court is persuaded that is the case. Defendant points out that the ALJ asked the Vocational Expert to assume an individual who is limited to work that does not require more than basic English. The Court presumes that the ALJ knew what he was asking when he asked it. Also, at the administrative hearing, after the ALJ's questioning, Plaintiff's attorney asked the Vocation Expert only one question: "You said that an individual who was limited to simple, routine tasks and basic English would not be able to perform the past relevant work identified?" The Vocational Expert confirmed. Doubtless, if the ALJ had misspoken he would have seen that exchange as an opportunity to correct the error. Lastly, the ALJ, under the section of his decision discussing Plaintiff's RFC, noted that "[t]he limitation above regarding the claimant's English language fluency, reflects her use of a Cambodian interpreter during the hearing and during medical appointments." The Court interprets the ALJ's finding of "not able to communicate in English" to be a typographical error. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (a reviewing court is not "deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion").

**G.      SSR 85-15**

Plaintiff's final argument is that the ALJ failed to properly apply SSR 85-15 at the fifth step of the evaluation process.  She argues that the ALJ failed to mention SSR 85-15 and fails to consider how someone with Plaintiff's moderate and mild limitations "can nevertheless meet the basic mental demands of unskilled work."  Mot. at 15.  Plaintiff, however, again mischaracterizes the ALJ's decision.  The ALJ does in fact refer to SSR 85-15 at the fifth step in the evaluation process.  As such, the Court has no reason to doubt that the ALJ considered what is required by that ruling.  *Lockwood*, 616 F.3d at 1072, n.3 ("We presume that ALJs know the law and apply it in making their decisions.").  There was no error here.

## VI.     CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: September 1, 2020

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

26